UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PERRY L, EMILY M and J.L.,

        Plaintiffs,

v.                                                    Case No. 22-cv-1244-bhl

MILWAUKEE MONTESSORI SCHOOL,

        Defendant.

---

## ORDER

---

      Plaintiffs Perry L. and Emily M. invoke Title III of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 to challenge the expulsion of their son, Plaintiff J.L., from the Milwaukee Montessori School (MMS). The Court previously dismissed their second amended complaint, without prejudice, on standing grounds, but Plaintiffs have returned with a third amended complaint in which they attempt to cure their standing problems and add a new claim for Intentional Infliction of Emotional Distress (Emotional Distress). MMS has responded with another motion to dismiss, asserting that Plaintiffs have still not properly alleged their standing. MMS also argues for dismissal on grounds that that J.L. is not a qualifying individual with a disability under the ADA and the Rehabilitation Act, and that Plaintiffs have failed to state an Emotional Distress claim. The Court agrees with Defendants with respect to the Emotional Distress claim, but MMS's other arguments are rejected. Accordingly, MMS's motion to dismiss will be granted in part and denied in part.

### FACTUAL BACKGROUND[1]

      On March 18, 2021, Perry L. and Emily M. learned that their son, J.L., had been accepted into MMS. (ECF No. 29 ¶7.) On the school's advice, J.L. began attending immediately and, apparently, made a strong first impression. (*Id.* ¶¶9–10.) His first-grade teacher called him "a kind and well-behaved child" and added: "It is a joy having him in class, and I look forward to fostering his growth in the coming years!" (ECF No. 29-4 at 4.)

---

[1] These facts are derived from Plaintiffs' third amended complaint, ECF No. 29, the allegations in which are presumed true when considering a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).

J.L. started second grade at MMS on August 23, 2021. (ECF No. 29 ¶12.) A week later, his teacher informed Emily M. that J.L. struggled to pay attention during class and frequently interrupted her instruction. (*Id.* ¶13.) On no fewer than 10 occasions, Emily M. asked to meet with the teacher to discuss J.L.'s challenges, but she was rebuffed at every turn. (*Id.* ¶14.) Finally, on September 22, 2021, MMS Head of School Monica Van Aken emailed Perry L. and Emily M., asked that they ask their pediatrician to provide the school with the Child Attention Profile (CAP)[2] for J.L.'s teachers to fill out, and calendared a meeting for the following Tuesday. (ECF No. 29-4 at 3.)

The meeting occurred as scheduled but ended abruptly when Van Aken announced: "[W]e are done here!" and walked out. (ECF No. 29 ¶16.) Mere hours later, she notified Perry L. and Emily M., via email, that MMS had terminated J.L.'s enrollment contract, effective October 1, 2021. (ECF No. 29-2 at 2.) Perry L. and Emily M. challenged Van Aken's decision in a letter to the MMS Board of Trustees. (ECF No. 29-4.) They emphasized that the school appeared to regard J.L. as a student suffering from ADHD but refused to attempt to accommodate him. (*Id.* at 3.) They also explained that they had provided the CAP as Van Aken requested and secured an initial consult with a child psychologist for November 30, 2021—using Emily M.'s connections to jump the waitlist. (*Id.* at 2–3.) In response, Van Aken agreed to hold J.L.'s dismissal in abeyance through October 31, 2021. (ECF No. 29-6 at 1.)

On October 8, 2021, with lawyers for both sides present, Van Aken, Perry L., and Emily M. met to discuss next steps. (ECF No. 29 ¶22.) Perry L. and Emily M. proposed a series of accommodations that MMS could implement to address J.L.'s inattention and impulsivity, but Van Aken rejected every single one. (*Id.*) After the unproductive meeting, Perry L. and Emily M. discovered that MMS had removed them from the internal communication system to which all other MMS parents had access. (*Id.* ¶23.) Other channels of communication also closed. For instance, on October 18, 2021, Emily M. emailed J.L.'s teacher and asked her to address bullying concerns. (*Id.* ¶24.) She received no response. (*Id.*) A follow-up, sent to both J.L.'s teacher and Van Aken, also went unanswered. (*Id.* ¶25.) Then, in a letter dated November 11, 2021, MMS officially dismissed J.L. (*Id.* ¶26.)

---

[2] The CAP is a behavior rating scale used to identify children with Attention Deficit Hyperactive Disorder (ADHD). (ECF No. 29 ¶15.)

J.L. underwent his scheduled neuropsychological examination in November and December of 2021. (*Id.* ¶27.) Upon completion, Dr. Sarah K. Sengstock issued a report, diagnosing "ADHD-Combined Type" and recommending reasonable accommodations. (ECF No. 29-16 at 4, 5–7.) J.L. subsequently enrolled in Cumberland Elementary School, where he has reportedly excelled. (ECF No. 29 ¶¶28–29.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Plaintiffs' third amended complaint asserts five claims. In those claims Plaintiffs allege that MMS: (1) discriminated against J.L. on the basis of his disability in violation of Title III of the ADA; (2) retaliated against Perry L. for asserting J.L.'s rights under the ADA; (3) retaliated against Emily M. for asserting J.L.'s rights under the ADA; (4) discriminated against J.L. on the basis of his disability in violation of Section 504 of the Rehabilitation Act of 1973; and (5) intentionally inflicted emotional distress on J.L. (ECF No. 29 ¶¶34–57.)

MMS again seeks dismissal of all claims. With respect to Counts I–IV, MMS insists that Plaintiffs continue to lack standing to sue, and, in the alternative, that Plaintiffs have failed to sufficiently allege that J.L. is a qualified individual with a disability under the ADA and the Rehabilitation Act. (ECF No. 31 at 2–3.) MMS challenges Count V on grounds that Plaintiffs have failed to state an Emotional Distress claim under Wisconsin law.[3] (*Id.* at 27–32.) Because Plaintiffs have established standing and have sufficiently pleaded that J.L. has a qualifying disability under the ADA and the Rehabilitation Act, MMS's motion to dismiss those claims will

---

[3] MMS alternatively asks the Court to exercise its discretion (after dismissing the ADA and Section 504 claims) pursuant to 28 U.S.C. § 1367(c)(3) and dismiss the state law Emotional Distress claim for lack of subject-matter jurisdiction. (ECF No. 31 at 26–27.) Because the federal claims remain following this ruling, MMS's request is denied as moot.

be denied. But the Court agrees that Plaintiffs have not sufficiently pleaded an Emotional Distress claim, so that claim will be dismissed.

I.  **Plaintiffs Have Standing to Sue.**

MMS's lead argument for dismissal is a renewed challenge to Plaintiffs' standing. "The Supreme Court has held that a plaintiff must meet three key requirements to establish standing: the plaintiff must show (1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073–74 (7th Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs' second amended complaint was dismissed because they failed to identify any concrete, redressable harms. MMS contends their third amended complaint contains the same fatal flaw. The Court disagrees.

Plaintiffs again seek three injunctions. The first asks the Court to:

> Enjoin Defendant, its board, officers, agents, employees, and all others in concert or participation with it, from engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36, and Sec. 504 of the Rehabilitation Act of 1973.

(ECF No. 29 at 12.) The second asks the Court to:

> Order Defendant to comply with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36, and Sec. 504 of the Rehabilitation Act of 1973.

(*Id.* at 13.) And the third asks the Court to:

> Order Defendant to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiffs J.L., Perry L. and Emily M. to the position that they would have been in but for Defendant's conduct, including but not limited to ordering Defendant to admit Plaintiff J.L. to MMS, cease discriminating against him, cease retaliating against Plaintiffs Perry L. and Emily M., and provide Plaintiff J.L. with reasonable accommodations for his disability upon his return to MMS.

(*Id.*)

For standing purposes, the question is whether any of these injunctions will address an actual and imminent injury that these plaintiffs are likely to suffer because of MMS's conduct. *See Lujan*, 504 U.S. at 560–61. "Past exposure to illegal conduct" is not enough. *O'Shea v. Littleton*,

414 U.S. 488, 495 (1974). It is the reasonably certain threat of *future* harm that creates standing to sue for injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983).

In dismissing Plaintiffs' second amended complaint, the Court noted Plaintiffs' apparent reluctance to assert any intent for J.L. to return to MMS. (ECF No. 28 at 6 (citing ECF No. 26 at 3).) Absent such intent, the law is clear that any harm alleged by Plaintiffs is too speculative to "support a finding of the 'actual or imminent' injury" necessary for standing. *Lujan*, 504 U.S. at 564 (quoting *Lyons*, 461 U.S. at 102). As the Court explained, Seventh Circuit law requires at least some evidence of intent to reenroll for a student to have standing to obtain prospective injunctive relief against their former school. *See Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019); (ECF No. 28 at 6.)

In an effort to cure the deficiency in their earlier pleading, Plaintiffs have filed a third amended complaint that now specifically alleges that:

> Plaintiffs Perry L. and Emily M. intend to return their son Plaintiff J.L. to school at MMS if the court orders Defendant MMS to stop discriminating against him, provide him with any reasonable accommodations which his disability may requires, and admit him into its school.

(ECF No. 29 ¶32.)

Even though this allegation directly addresses the Court's prior ruling, MMS believes the third amended complaint remains defective. MMS disparages this additional allegation, calling it "disingenuous and caveat laden." (ECF No. 31 at 11.) According to MMS, the Court should not credit this allegation because Plaintiffs have also alleged that J.L. is thriving at his new school and, by doing so, "clearly admit their intent is not to reenroll." (*Id.*) The Court declines MMS's invitation to disregard Plaintiffs' express allegation of their intent to reenroll J.L at MMS in favor of MMS's proposed insinuation that it must be false. Following MMS's logic would be contrary to the standard this Court must apply in deciding a motion to dismiss. It is fundamental that, at the motion to dismiss stage, the Court must accept all of Plaintiffs' well-pleaded facts as true and draw all reasonable inferences in their favor. *Roberts*, 817 F.3d at 564. MMS asks the Court to do the exact opposite. While the Court must read the complaint as a whole, there is nothing in Plaintiffs' allegation that J.L. is thriving at his new school that "expressly refute[s]," as MMS suggests, their additional allegation that Plaintiffs intend to reenroll him at MMS if they prevail in this lawsuit. (*See* ECF No. 31 at 11.) Drawing all reasonable inferences in favor of Plaintiffs, there is no contradiction in the complaint.

Next, MMS argues that Plaintiffs' demand for reasonable accommodations not only demonstrates their insincerity, but also requires relief that is not warranted by law. (*Id.* at 11–12.) As for the sincerity of Plaintiffs' allegations, the Court has already explained why such an argument is inconsistent with the standard applicable to a motion to dismiss. Plaintiffs' well-pleaded facts must be accepted as true. *Roberts*, 817 F.3d at 564. MMS's repeated assaults on Plaintiffs' sincerity do not change that. MMS is equally off base in claiming that Plaintiffs' demand for reasonable accommodations "is unreasonable, above and beyond what the law requires, and not applicable to MMS." (ECF No. 31 at 11.) As MMS admits, Title III of the ADA requires it to make "reasonable modifications in policies, practices, or procedures." 42 U.S.C. § 12182(b)(2)(A)(ii). MMS complains that Plaintiffs improperly request "reasonable accommodations" when the statute requires "reasonable modifications." (ECF No. 31 at 11–12). This semantic complaint goes nowhere. The Seventh Circuit has explicitly recognized a duty to "provide reasonable accommodations" under both Title III of the ADA and Section 504 of the Rehabilitation Act. *See A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018). There is nothing in Seventh Circuit law to support MMS's attempt to create a material distinction between "reasonable modifications" and "reasonable accommodations." And even if there were, this is an issue over remedy, not a basis for dismissal.

MMS also contends that Plaintiffs are improperly requesting the MMS "provide special education." (ECF No. 31 at 12.) This argument is also unavailing. As an initial matter, it is not clear that Plaintiffs actually make such a request—Plaintiffs appear merely to request "any reasonable accommodations which [J.L.'s] disability may require," a remedy that is available under both Title III and Section 504. (*See* ECF No. 29 ¶32.) Regardless, such an argument again goes to the remedy that might issue if Plaintiffs' prevail and is not a ground for dismissal of Plaintiffs' ADA and Rehabilitation Act claims.

Finally, MMS claims that a "single statement in the complaint is insufficient to satisfy the 'concrete and particularized' standard established by the Seventh Circuit" in *Scherr*. (ECF No. 31 at 12.) MMS's reliance on *Scherr* is misplaced. In *Scherr*, the Court of Appeals recognized that "conditional statements" of an intent to return "but for ongoing [ADA] violations—*cannot* 'be equated with [] speculative "some day intentions"' that [are] insufficient to show injury in fact." *Scherr*, 703 F.3d at 1074 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (quoting *Lujan*, 504 U.S. at 564)) (emphasis added). Plaintiffs have

stated they intend to return J.L. to MMS if MMS's alleged violations of the ADA and Rehabilitation Act are remedied. (ECF No. 29 ¶32.) This is sufficient to establish standing. MMS's suggestion that Plaintiffs must provide concrete plans to return J.L. to MMS on a specific date in order to allege a sufficiently concrete and particularized injury is simply not the law.

## II. Plaintiffs' Third Amended Complaint Pleads that J.L. Is Disabled Under the ADA and Section 504.

MMS also seeks dismissal of Plaintiffs' ADA and Rehabilitation Act claims on grounds that they have not met their threshold burden of alleging that Plaintiff J.L. has a qualifying disability as defined by those statutes. Under both statutes, "[a]n individual is 'disabled' if he has (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) if he is regarded as having such an impairment." *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995). The third amended complaint contains sufficient factual allegations to support inferences under prongs (1) and (3) applicable to both statutes. Accordingly, MMS's request for dismissal of Counts I–IV will be denied.

### A. Plaintiffs Plausibly Allege that J.L. Has A Physical or Mental Impairment Which Substantially Limits One or More of the Major Life Activities.

Plaintiffs can properly state claims under both the ADA and Rehabilitation Act if they allege that JL has "a physical or mental impairment which substantially limits one or more of the major life activities." *Roth*, 57 F.3d at 1454. Their allegations satisfy this requirement.

Plaintiffs indicate that J.L. received a neuropsychological examination in November and December of 2021 that led to a diagnosis of ADHD. (ECF No. 29 ¶27.) This diagnosis is consistent with the struggles reported by J.L.'s teacher at MMS, that he "was having challenges paying attention in school and was interrupting instruction." (ECF No. 29 ¶13.) While alleging that J.L. has received a diagnosis of ADHD is not conclusive *proof* that J.L. qualifies as "disabled" under the ADA and the Rehabilitation Act, Plaintiffs are not required to offer proof at the pleading stage of their case. The pleading rules simply require them to allege facts sufficient to tell a plausible story that they are entitled to relief. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he plaintiff must give enough details . . . to present a story that holds together."). In the present context, that means Plaintiffs are required to allege enough facts to allow the Court to infer that J.L. has "a physical or mental impairment that substantially limits one or more . . . major life activities." The allegations of the third amended complaint allow for such an inference.

Plaintiffs allege that J.L. has ADHD and that his ADHD has significantly affected his ability to learn and concentrate in school. Both "learning" and "concentrating" are examples of major life activities explicitly named in the ADA's definition of disability. 42 U.S.C. § 12102(2)(A). To suggest, as MMS does, that "Plaintiffs allege nothing to show J.L. has a disability under the ADA," (ECF No. 31 at 15), is obviously contrary to the record. The facts alleged in the third amended complaint, taken as true, plausibly establish that J.L. has a qualifying disability under the ADA and Section 504.

MMS spends a considerable portion of its briefing asserting that it cannot be held liable because Plaintiffs "failed to provide a proper diagnosis of an alleged disability and request for specific accommodation prior to J.L.'s dismissal." (ECF No. 31 at 5, 15.) But Plaintiffs allege that MMS's own conduct caused the lack of notice it now complains about. When MMS reported behavioral issues to Perry L. and Emily M., they promptly scheduled a neurological examination, even using Emily M.'s connections to jump the waiting list. (ECF No. 29-4 at 2–3.) MMS had notice of this scheduled exam, had itself reported behavioral issues from J.L. that were apparently serious enough to warrant dismissal, was informed by Plaintiffs' counsel that Plaintiffs were asserting their rights under the ADA, and were presented with and denied a list of reasonable accommodations by Perry L. and Emily M., all before making the ultimate decision to dismiss J.L. These allegations are sufficient for the Court to infer that MMS had adequate notice of J.L.'s disability prior to his dismissal from MMS.

None of the cases MMS cites warrant a different conclusion.[4] Most of the cases it cites address whether a defendant institution failed to provide reasonable accommodations to a plaintiff, not whether the plaintiff had a qualifying disability. None involved a situation in which a defendant was put on notice of a pending examination and then chose to expel the allegedly disabled plaintiff before receiving notice or confirmation of the claimed disability. In any event, these are issues for summary judgment, not a motion to dismiss.

---

[4] MMS cites to *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432 (6th Cir. 1998), *Wynne v. Tufts University School of Medicine*, 976 F.2d 791 (1st Cir. 1992), *DMP v. Fay School ex rel. Board of Trustees,* 933 F. Supp. 2d 214 (D. Mass. 2013), *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368 (3rd Cir. 1991), and *Singh v. George Washington University School of Medicine & Health Sciences*, 508 F.3d 1097 (D.C. Cir. 2007) to support its argument. The only case in the Seventh Circuit MMS includes is *Salvador v. Bell*, 622 F. Supp. 438 (N.D. Ill. 1985), *aff'd*, 800 F.2d 97 (7th Cir. 1986), which held that a student had no private right of action under the Rehabilitation Act of 1973 against the Secretary of Education and is largely inapplicable to the present matter.

### B. Plaintiffs Also Plausibly Allege that MMS Regarded J.L. as Having a Disability.

Plaintiffs have also sufficiently pleaded ADA and Rehabilitation Act claims by alleging that MMS "regarded" J.L. as having a disability. Under this prong of the statutes, Plaintiffs must allege facts sufficient to establish "that [J.L.] has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A). Plaintiffs allege that Van Aken "demand[ed] that they take J.L. to his pediatrician to be assessed due to his behavior at school" and ask the doctor to provide the CAP for J.L.'s teachers to complete, "indicating that [Van Aken] was treating J.L. as if he had a disability." (ECF No. 29 ¶15.) Van Aken also initially dismissed J.L. from MMS "for alleged behavior that was a manifestation of J.L.'s disability." (*Id.* ¶17.) While the Court is not required to accept Plaintiffs' legal conclusion that Van Aken was treating J.L. as if he had a disability, it is required to credit their well-pleaded factual allegations. And those allegations create a plausible inference that Van Aken regarded J.L. as having a mental impairment (ADHD) and dismissed him from MMS because of his perceived impairment.

### III. Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress.

MMS also seeks dismissal of Plaintiffs' newly added claim for Intentional Infliction of Emotional Distress. Under Wisconsin law, this claim has four elements: (1) "the purpose of the [Defendant's] conduct was to cause emotional distress"; (2) "the conduct was extreme and outrageous"; (3) "[the conduct] was the cause in fact of plaintiff's injury"; and (4) "the plaintiff suffered an extreme disabling emotional response." *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 378 (Wis. 1978). Plaintiffs' Emotional Distress claim is premised on the actions of Van Aken and subordinate MMS employees and the doctrine of *respondeat superior*. MMS argues that Plaintiffs have failed to allege facts sufficient to state a claim against MMS on each of the four elements. (ECF No. 31 at 27–32.) The Court agrees that Plaintiffs have not plausibly alleged facts on the first two elements. Even reading the complaint in Plaintiffs' favor, they have not alleged that Van Aken or other MMS employees engaged in conduct that was intended to cause J.L. emotional distress. Nor do the allegations support sufficiently extreme and outrageous conduct. Accordingly, MMS's motion will be granted with respect to Plaintiffs' Emotional Distress claim.

### A. Plaintiffs Do Not Plausibly Allege that MMS Intended to Cause J.L. Emotional Distress.

To survive a motion to dismiss, Plaintiffs must allege facts sufficient for the Court to infer that MMS's "course of conduct was undertaken for the purpose of imposing psychological harm

upon [J.L]." *Alsteen v. Gehl*, 124 N.W.2d 312, 317 (Wis. 1963). While intent can be "inferred from the allegations," there must be facts presented that create a reasonable inference of intent to cause emotional distress. *McKissick v. Schroeder*, 235 N.W.2d 686, 690 (Wis. 1975). "There must be something more than a showing that the defendant intentionally engaged in the conduct . . . the plaintiff must show that the conduct was engaged in *for the purpose* of causing emotional distress." *Rabideau v. City of Racine*, 627 N.W.2d 795, 803 (Wis. 2001) (emphasis added).

Plaintiffs' factual allegations do not suffice to create a plausible inference that MMS acted with the "purpose of imposing psychological harm" on J.L. Nor is there anything in the third amended complaint that would allow the Court to reasonably infer that Van Aken, or any other MMS employee, treated J.L. "as an object to be deliberately manipulated, humiliated, and scorned." *See Alsteen*, 124 N.W.2d at 317. As evidence of intent, Plaintiffs point to their allegations that MMS permitted J.L. to be bullied at school, refused to respond to Perry L. and Emily M. about their concerns, and then permanently dismissed J.L. from MMS. (ECF No. 33 at 22.) But even read generously, these allegations are insufficient to satisfy the legal requirements for an Emotional Distress claim. At most, the Court might infer that MMS was indifferent to any emotional distress that J.L. might suffer at the hands of other students or as a result of his dismissal. But Wisconsin law requires more. The Supreme Court of Wisconsin has expressly disavowed liability for intentional infliction of emotional distress when the defendant's actions are not expressly intended to cause emotional distress to the plaintiff. *Alsteen*, *Id.* at 316–17. And the presumption in favor of Plaintiffs at this stage is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Plaintiffs need to allege more than the conclusory assertion that Van Aken "intentionally infl[i]cted emotional distress upon Plaintiff J.L." (ECF No. 29 ¶54.) There is nothing in the record on which the Court can reasonably infer that Van Aken, or any other MMS employee, engaged in conduct *for the purpose* of causing emotional distress to J.L.

### B. Plaintiffs Do Not Plausibly Allege that MMS's Conduct Was Extreme and Outrageous.

Plaintiffs' Emotional Distress claim also fails because the underlying conduct that is alleged does not rise to the level necessary to support such a claim under Wisconsin law. Plaintiffs assert that MMS's alleged refusal to stop other classmates from bullying J.L. and their subsequent dismissal of J.L. constitute sufficiently extreme and outrageous actions to support their claim. Wisconsin law requires more. "Extreme and outrageous conduct" must be of a character such that "[t]he average member of the community must regard the defendant's conduct . . . as being a

complete denial of the plaintiff's dignity as a person." *Alsteen*, 124 N.W.2d at 318. Plaintiffs' allegations are insufficient to establish extreme and outrageous conduct, as a matter of law. Plaintiffs have not alleged any conduct by MMS that reasonably rises to the level of complete denial of J.L.'s dignity as a person. Accordingly, their Emotional Distress claim must be dismissed.

Plaintiffs cite a case in which police officers extensively questioned a plaintiff while in the presence of her dying son (whom they shot), while refusing to allow her to call for medical assistance for her dying son. (ECF No. 33 at 22); *McKissick*, 235 N.W.2d at 690. *McKissick* also references *Slawek v. Stroh*, 215 N.W.2d 9 (Wis. 1974), in which a woman claimed that a former romantic interest "repeatedly telephoned her and her family at all hours of the day and night, and tried to see her in public and private by the use of ruses, stories, and false names." *McKissick*, 235 N.W.2d at 690. While these cases do not conclusively establish the lower limits of conduct that might reasonably be considered extreme and outrageous, they confirm the general level of conduct required for such a finding. And that level is above what Plaintiffs claim MMS officials did here. At most, Plaintiffs allege that MMS officials turned a blind eye to bullying by J.L.'s classmates and dismissed him from school. The most serious allegation in Emily M.'s letter to J.L.'s teacher is that a classmate once called him "stupid." (ECF No. 29-12.) While the Court has no wish to minimize the effects that bullying can have on children, MMS's alleged inaction in the face of these minor issues, even if deliberate, can hardly be characterized as extreme and outrageous. Nor can its routine administrative decision to dismiss J.L. from school. As the *Alsteen* Court concluded, "the desirable goal of avoiding careless disregard for the feelings of others must be accomplished by some other means than a [claim for Emotional Distress]." *Alsteen*, 124 N.W.2d at 319.

Because the Court is satisfied that Plaintiffs have not sufficiently pleaded the first two elements of an Emotional Distress claim, it will not address the closer questions of whether Plaintiffs have sufficiently alleged causation and an "extreme disabling emotional response" by J.L.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, ECF No. 30, is **GRANTED, in part,** and **DENIED, in part.** Plaintiffs may proceed on their claims for relief under the ADA and Section 504 of the Rehabilitation Act of 1973. Plaintiffs' claim for Emotional Distress is dismissed for failure to state a claim.

Dated at Milwaukee, Wisconsin on October 23, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge