UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PERRY L, EMILY M and J.L.,

                 Plaintiffs,

      v.                                           Case No. 22-cv-1244-bhl

MILWAUKEE MONTESSORI SCHOOL,

                 Defendant.

---

### ORDER DISMISSING CASE FOR LACK OF SUBJECT-MATTER JURISDICTION

---

In the fall of 2021, administrators at the Milwaukee Montessori School (Milwaukee Montessori) informed Plaintiffs Perry L. and Emily M. that the school was terminating the enrollment contract for their son, Plaintiff J.L., due to behavioral problems. When the parents protested, Milwaukee Montessori temporarily relented, but, several weeks later, followed through and permanently terminated J.L.'s contract. After settling J.L. in a new school, Perry L. and Emily M. sued Milwaukee Montessori for violating Title III of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973, insisting that J.L. suffered from Attention Deficit Hyperactive Disorder (ADHD) and his dismissal violated the anti-discrimination and anti-retaliation provisions of both statutes. To remedy the violations, Plaintiffs requested both equitable and monetary relief.

While the parties vigorously dispute the merits of Plaintiffs' claims, the underlying issue of Plaintiffs' standing has permeated this case from the beginning. Both the ADA and Rehabilitation Act offer limited avenues for monetary relief, and, given J.L.'s enrollment at a new school, it was far from clear that declaratory or injunctive relief would address a "real and immediate" threat sufficient to create a present case or controversy. Milwaukee Montessori moved to dismiss the First, Second and Third Amended Complaints on standing grounds and Plaintiffs responded with repeated amendments to try to eliminate questions about their standing. On October 23, 2023, the Court concluded that Plaintiffs had adequately pleaded facts to support their standing by specifically alleging in their Third Amended Complaint their intent to return J.L. to Milwaukee Montessori if the Court ruled in their favor and ordered the school to readmit him.

The issue of Plaintiffs' standing has come back to the forefront at summary judgment. Discovery has revealed that, shortly after filing their Third Amended Complaint, Perry L. and Emily M. moved their family to London, England, where J.L. is enrolled in a new school, making any prospect of him reenrolling at Milwaukee Montessori far from certain, even if the Court were to rule in Plaintiffs' favor. Milwaukee Montessori has thus renewed its standing objection, and the Court has held two hearings to allow Plaintiffs the chance to explain how they have standing to continue their claims. At the second hearing, the Court heard testimony from Perry L. and Emily M., who confirmed their August 2023 move to London, where J.L. is now enrolled in the American School through the 2025–26 school year, and, while the family hopes to return to Wisconsin someday, they have no concrete plans to do so at present. These concessions leave Plaintiffs without standing to pursue their ADA and Rehabilitation Act claims; no ruling by this Court will remedy an existing violation of either statute. Accordingly, the case must be dismissed without prejudice for lack of subject-matter jurisdiction.

## FACTUAL BACKGROUND

In the spring of 2021, Perry L. and Emily M. enrolled J.L. at Milwaukee Montessori for the end of his first-grade year. (ECF No. 87 at 2 ¶4.) J.L.'s time as a Milwaukee Montessori first grader proceeded without incident and he returned for second grade in August of 2021. (*Id.* at 3 ¶6.) J.L.'s second-grade year did not proceed as uneventfully; his teacher began reporting behavioral issues. (*Id.* at 52–54 ¶¶5–8.) While the parties dispute the extent of these issues and how the school communicated them to his parents, there is no question that concerns were raised concerning whether Milwaukee Montessori was a good fit for J.L. (*Id.* at 4–7 ¶¶7–11.)

On September 22, 2021, Milwaukee Montessori's Head of School, Monica Van Aken, emailed Perry L. and Emily M., and asked that they obtain from J.L.'s pediatrician a form used to identify children with ADHD. (*Id.* at 53–54 ¶7; ECF No. 85-6.) After a September 28, 2021 meeting with Van Aken and J.L.'s teacher, Perry L. and Emily M. were informed that J.L. was being dismissed from the school, effective October 1, 2021. (ECF No. 87 at 8–9 ¶¶12–13.) This dismissal was later held in abeyance, however, and J.L. was allowed to remain in the school. (*Id.* at 9 ¶14.)

On October 12, 2021, Perry L. and Emily M., accompanied by legal counsel, met with Van Aken and Milwaukee Montessori's legal counsel. (*Id.* ¶15.) At the meeting, Plaintiffs provided a "working diagnosis" of ADHD and generalized anxiety disorder from J.L.'s pediatrician. (*Id.* at

10–11 ¶18.)  On October 16, 2021, Milwaukee Montessori, through counsel, sent Plaintiffs a letter delineating several techniques Milwaukee Montessori was incorporating to assist J.L., although the parties dispute the extent to which those techniques were implemented.  (*Id.* at 13–20 ¶¶22–29.)  During this period, Milwaukee Montessori compiled a binder containing notes, observations, and examples of work product gathered by twelve staff members who observed J.L.  (*Id.* at 22–23 ¶¶32–35.)  According to Milwaukee Montessori, J.L. continued to fall behind his peers and disrupt class.  (*Id.* at 23 ¶35.)

On November 11, 2021, Van Aken again decided to dismiss J.L. from Milwaukee Montessori.  (*Id.* at 33 ¶54.)  The next day, Milwaukee Montessori's counsel sent Plaintiffs' counsel a letter explaining the school's decision to dismiss J.L.  (*Id.* at 37 ¶57.)  Following his dismissal, J.L. met with a neuropsychologist three times and was formally diagnosed with ADHD on December 17, 2021.  (*Id.* at 39 ¶¶63–64.)  J.L. has since started taking medication for his ADHD.  (*Id.* at 43–44 ¶¶74–75.)

In August 2023, Plaintiffs sold their home outside Milwaukee and moved to London, England, where they currently reside.  (*Id.* at 46 ¶79.)  J.L. is enrolled at the American School in London for the 2024–25 and 2025–26 school years, where he is reportedly "thriving."  (*Id.* at 47–48 ¶¶83, 86.)

## ANALYSIS

Plaintiffs' ability to maintain this lawsuit depends on their standing.  Federal courts are courts of limited jurisdiction, and, under Article III of the Constitution, a federal court may only exercise federal judicial power to decide actual "cases" and "controversies" falling within the jurisdiction authorized by Congress.  *See* U.S. Const. art. III § 2.  A plaintiff seeking to invoke a federal court's jurisdiction must have a "personal stake" or "standing" in the outcome of the case.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).  To establish standing, a plaintiff must show: (1) an injury-in-fact; (2) that is fairly traceable to the defendant; and (3) likely to be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  An injury-in-fact must be "concrete and particularized" and "actual or imminent."  *Id.* at 560.  A plaintiff must establish standing for each claim asserted and each form of relief sought.  *TransUnion*, 594 U.S. at 431 (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

Plaintiffs' Third Amended Complaint alleges that Milwaukee Montessori discriminated

against J.L. in violation of Title III of the ADA and Section 504 of the Rehabilitation Act and retaliated against Perry L. and Emily M. for asserting J.L.'s rights under the ADA. (ECF No. 29.) Plaintiffs request injunctive relief that would allow J.L. to return to school at Milwaukee Montessori with reasonable accommodations. (*Id.* at 13.) They also seek a declaration that Milwaukee Montessori violated Title III of the ADA and Section 504. (*Id.* at 12–13.) And they request monetary damages including compensatory damages for pain, suffering, emotional distress, and the out-of-pocket costs Plaintiffs incurred for J.L.'s neuropsychological evaluation and therapy, as well as exemplary damages for Milwaukee Montessori's knowing and willful violation of the ADA. (*Id.* at 13.)

In denying Milwaukee Montessori's most recent motion to dismiss, the Court concluded that Plaintiffs' Third Amended Complaint sufficiently alleged their standing to pursue injunctive relief under the ADA and Rehabilitation Act. Since that time, however, the factual record developed in discovery has brought Plaintiffs' standing back into question. This Court's subject-matter jurisdiction requires that Plaintiffs have standing not only at the inception of the case but all the way through resolution. *TransUnion*, 594 U.S. at 431 (citing *Davis*, 554 U.S. at 733) ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation."). At the pleading stage, general factual allegations of injury may suffice to show standing. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citing *Lujan*, 504 U.S. at 561). But when the allegations supporting standing are questioned as a factual matter—whether by the defendant or by the Court—the plaintiff must prove each controverted element of standing by a preponderance of the evidence. *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). Accordingly, Plaintiffs must provide competent proof of their standing to avoid dismissal for lack of subject-matter jurisdiction. The Court finds that Plaintiffs have not shown that they have standing to proceed, and the case will therefore be dismissed without prejudice.

## I. Plaintiffs Have Not Established an Imminent Injury Warranting Injunctive Relief.

Plaintiffs' primary standing argument rests upon their request for injunctive relief as a proposed remedy for Milwaukee Montessori's alleged violations of the ADA and Rehabilitation Act. Plaintiffs request an injunction that would allow J.L. to reenroll at Milwaukee Montessori with reasonable accommodations for his ADHD. (*See* ECF No. 29 at 12–13.) Milwaukee Montessori insists, as it has throughout this litigation, that Plaintiffs' request for injunctive relief

does not confer standing to sue for violations of these statutes. It points out that standing based on a request for injunctive relief requires proof that the injunction will remedy an actual or imminent injury and because Plaintiffs do not have concrete plans to reenroll J.L. at the school, they cannot base their standing on their demand for an injunction. (ECF No. 82 at 8–11.)

It is well-established that to have standing to sue, a plaintiff must show that he or she is suffering an injury in fact that is "actual or imminent." *Lujan*, 504 U.S. at 560. "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). To have standing for injunctive relief, a plaintiff must establish "a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Thus, Plaintiffs cannot base their standing to sue for injunctive relief on allegations of past discrimination by Milwaukee Montessori. Instead, they are required to show that, absent an injunction, they face a real and immediate threat of current or future discrimination by the school.

Plaintiffs' standing to pursue injunctive relief against Milwaukee Montessori has been the focus of much of this litigation. In dismissing Plaintiffs' Second Amended Complaint, the Court noted Plaintiffs' apparent reluctance to assert any intent for J.L. to return to Milwaukee Montessori. (ECF No. 28 at 6 (citing ECF No. 26 at 3).) Absent such intent, any harm alleged by Plaintiffs was too speculative to "support a finding of the 'actual or imminent' injury" necessary for standing. *See Lujan*, 504 U.S. at 564. In an effort to cure their pleading deficiency, Plaintiffs' Third Amended Complaint alleged an affirmative intent to return J.L. to Milwaukee Montessori if the Court ordered the school to readmit him and provide reasonable accommodations as required by law. (ECF No. 29 ¶32.) In its motion to dismiss, Milwaukee Montessori challenged this allegation as "disingenuous and caveat laden," (ECF No. 31 at 11), but the Court concluded it was sufficient, at the pleading stage, to establish standing for injunctive relief, (ECF No. 37 at 4–7).

In discovery, Milwaukee Montessori learned that Plaintiffs had moved to London in August 2023 and, at summary judgment, renewed its challenge to standing as a factual matter, arguing that Plaintiffs' move out of the country undermined any claimed intent to reenroll J.L. at the school. (ECF No. 82 at 8–11.) On January 30, 2025, the Court held an evidentiary hearing at which Perry L. and Emily M. testified. (ECF No. 92.) Perry L. testified that Plaintiffs moved to London to pursue a business opportunity for him and originally planned to be there on a "year-to-

year" basis. He testified that his work visa expires in the summer of 2026, after which the family intends to return to the Milwaukee area. Perry L. confirmed that J.L. is attending the American School in London and that Emily M. has a two-year contract to teach at the American School for the 2024–25 and 2025–26 school years. And he testified that Plaintiffs sold their Milwaukee-area home to facilitate the move to London. Perry L. also testified that Plaintiffs were planning their move to London by November 2022. Emily M. testified that Plaintiffs had been planning the move since "maybe a month or two prior" to a November 29, 2022 email she sent indicating the family's intent to move to London in 2023. She further testified that she and Perry L. made the final decision to move to London when their children were admitted to the American School around March 2023.[1] Emily M. also testified to Plaintiffs' intent to return to the Milwaukee area in the summer of 2026. Both parents testified that their desire to return J.L. to Milwaukee Montessori has never wavered and that they intend to enroll him for the 2026–27 school year if granted the injunctive relief they seek.

Based on this latest evidence, Plaintiffs lack standing to pursue the injunctive relief they seek. Even accepting as true that Plaintiffs intend to reenroll J.L. at Milwaukee Montessori for the 2026–27 school year, any future harm they may suffer is too distant and conjectural to support standing. When the time comes for J.L. to resume schooling in Milwaukee, if Plaintiffs have an immediate and concrete intention to reenroll their son at Milwaukee Montessori and the school denies their request, they may reinstitute this litigation if they believe the denial is based on a violation of the ADA or Rehabilitation Act. But they are not facing an imminent injury from any existing statutory violation and do not have standing to obtain an injunction now.

In *Lujan v. Defenders of Wildlife*, the Supreme Court expounded on the requirement that an injury be "imminent" to support standing for injunctive relief. Recognizing that imminence is a "somewhat elastic concept," the Court cautioned that it must not be stretched beyond its purpose, which is to ensure that the injury alleged is "*certainly* impending." 505 U.S. 555, 564 n.2 (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Although the plaintiffs in *Lujan* had professed an intent to return to the site of their alleged injuries, they

---

[1] Plaintiffs' testimony confirms that they were already planning to move to London by the time they filed their First, Second, and Third Amended Complaints. Even though Milwaukee Montessori had questioned their standing as early as December 2022, Plaintiffs made no mention to the Court of their planned move until dispositive motions were filed. Given the significance of their intended move and its relevance to the standing arguments at play before the Court, Plaintiffs' failure to be forthcoming is troubling. Had they disclosed their intentions, their lack of standing could have been resolved sooner and all parties (and the Court) spared significant time and effort.

provided no evidence of concrete plans to do so. *Id.* at 563. The Court held that was insufficient to establish standing for injunctive relief. *Id.* at 564 n.2 ("[The imminence requirement] has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control.")

The Seventh Circuit has twice applied *Lujan* in situations similar to this case. In *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019), a student was suspended for a year and given conditions on his readmission after Purdue University found him guilty of sexual violence following an internal investigation. The student sued the university seeking, among other things, injunctive relief enjoining the school from "violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints." *Id.* at 666. The Court of Appeals concluded the student lacked standing to sue, noting that he had not alleged an intent to reenroll at the university, "much less that he faces a 'real and immediate threat' that" he will again be harmed by school policy. *Id.* (quoting *Lyons*, 461 U.S. at 105). Thus, in the context of an expulsion from school, alleging an intent to return to the school is necessary, but not sufficient, to demonstrate standing for injunctive relief. The plaintiff must also establish that the alleged future harm is imminent.

In *Scherr v. Marriott International, Inc.*, 703 F.3d 1069 (7th Cir. 2013), the Seventh Circuit applied *Lujan* in the ADA context. *Scherr* involved claims by an elderly woman who was injured while staying at a Courtyard Marriott Hotel when the spring-hinged door closer on her room's bathroom door slammed shut on her. *Id.* at 1072–73. She brought suit under Title III of the ADA seeking injunctive relief against not only that Courtyard Marriott, but fifty-six other Courtyard Marriotts that used the same spring-hinged door closers that caused her injury. *Id.* at 1071. The Seventh Circuit concluded that she had standing to sue only a single Courtyard Marriott location, because the allegations in her complaint allowed the Court to infer that she would visit that hotel in the near future absent its alleged ongoing ADA violations. *Id.* at 1073–75. This inference was supported by the hotel's proximity to many of her family members and her intent to attend a wedding in the area roughly six months after her complaint was filed. *Id.* at 1072, 1074. The Court of Appeals concluded she lacked standing to assert claims against any of the other Marriott hotels, given that she lacked any specific intent to visit them within any definite time period. *Id.* at 1074–75.

This Court relied upon *Purdue* and *Scherr* at the motion to dismiss stage in concluding that Plaintiffs had done just enough to establish standing in their Third Amended Complaint. (ECF No. 37 at 4–7.) In that pleading, Plaintiffs alleged an intent to return J.L. to Milwaukee Montessori if it was compelled to readmit him with reasonable accommodations. (ECF No. 29 ¶32.) But that allegation is now defeated by evidence of their move to London. Plaintiffs admit that while they plan to return to Milwaukee eventually, those plans are not imminent or concrete. Their professed intention to reenroll J.L. at Milwaukee Montessori, if and when they return to this country more than a year from now, is even more attenuated. Rather than being concrete, their intent to return J.L. to Milwaukee Montessori is comparable to the "'speculative "some day intentions"'" that were insufficient to show injury in fact in *Lujan*." *See Scherr*, 703 F.3d at 1073 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000)).

Plaintiffs now admit that, at best, they have an intent to return to Milwaukee in the summer of 2026 and will then attempt to enroll J.L. at Milwaukee Montessori. But standing "must exist at the commencement of the suit," *Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999), and continue throughout, *TransUnion*, 594 U.S. at 431. Plaintiffs' intent to return to Milwaukee and enroll J.L. for the 2026–27 term is speculative, not imminent. Plaintiffs have offered no evidence of any concrete plans to return to Milwaukee and enroll J.L. at Milwaukee Montessori.[2] Plaintiffs argue that it is too soon to purchase flights or secure housing for a move that will not occur for more than a year. But that argument highlights why standing is lacking. Much can happen between now and the fall of 2026 that would preclude the necessity of this Court ruling on Plaintiffs' claims. Plaintiffs are not suffering any present harm, and they cannot suffer even future harm from any discrimination unless and until they return to Milwaukee. In these circumstances, where "the acts necessary to make the injury happen are at least partly within the plaintiff[s'] control," standing law requires a "high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2. Plaintiffs admit that the *earliest* they might be harmed is nearly four years after they filed this lawsuit, three years after they first alleged an intent to return J.L. to Milwaukee Montessori,

---

[2] In response to Milwaukee Montessori's motion for summary judgment, Plaintiffs provided a document purporting to be a realtor contract to purchase a home in Wisconsin. (ECF No. 85-7.) But the contract does not obligate Plaintiffs to take any action and expires in August 2025, nearly a year before Plaintiffs now intend to return. (*See id.* at 6; *see also* ECF No. 86 at 4–6.) Plaintiffs also previously asserted an intent to return to Milwaukee sooner due to the health of Perry L.'s mother. (ECF No. 85-1 ¶19.) At the evidentiary hearing, Perry L. confirmed that his mother's health has improved and no longer necessitates an imminent return to Milwaukee.

and roughly fifteen months from the date of this Order. That cannot satisfy standing's requirement that the alleged harm be imminent.

In addition to an injunction allowing J.L. to return to Milwaukee Montessori with reasonable accommodations, Plaintiffs more generally seek an injunction ordering the school to "comply with the requirements of Title III of the ADA . . . and [Section] 504 of the Rehabilitation Act" and cease "discrimination against individuals with disabilities," as well as a declaration that the school violated both laws. (ECF No. 29 at 12–13.) These claims do not cure Plaintiffs' standing problem. As *Doe* confirms, Plaintiffs cannot assert standing to "champion the rights of other [students]" by seeking generalized injunction relief. *See* 928 F.3d at 666 ("[Plaintiff] plainly lacks standing to assert the . . . rights of other students . . . ."). Nor can Plaintiffs evade their standing problems through their request for declaratory relief. The Court addressed this point in its first dismissal order and will not repeat its analysis here. (*See* ECF No. 28 at 6 (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)).) Unless another remedy is available, the possibility of declaratory judgment does not confer standing. *See Shahi v. U.S. Dep't of State*, 572 F.Supp.3d 470, 481 (N.D. Ill. 2021).

## II. Plaintiffs Also Have Not Established Redressable Economic Harm That Is Fairly Traceable to Milwaukee Montessori.

Although this lawsuit has focused extensively on Plaintiffs' requests for injunctive relief, they also seek monetary relief. In their Third Amended Complaint, Plaintiffs seek a monetary award to compensate them for pain, suffering, emotional distress, and the out-of-pocket costs they claim to have incurred for J.L.'s neuropsychological evaluation and therapy. (ECF No. 29 at 13.) They also seek exemplary damages for Milwaukee Montessori's knowing and willful violation of the ADA. (*Id.*) Milwaukee Montessori concedes that Plaintiffs' claims of past injury are sufficient to establish an actual injury-in-fact for the purposes of their claims for damages. (*See* ECF No. 82 at 6–8); *see also Simic*, 851 F.3d at 738. The school nonetheless contends that Plaintiffs lack standing because their alleged damages are not redressable under Title III of the ADA and Section 504 of the Rehabilitation Act. (ECF No. 82 at 6–8.) The school also argues that Plaintiffs' out-of-pocket expenses for J.L.'s neuropsychological evaluation did not result from any unlawful action by the school and are thus not recoverable as a remedy for any of the statutory violations they allege. (*Id.* at 7.) Plaintiffs' response brief does not address their standing to pursue damages.

As the Court previously explained in ruling on Milwaukee Montessori's second motion to dismiss, neither of the statutory schemes Plaintiffs invoke provide for an award of monetary damages. Money damages of any kind are not available to private parties under Title III. (ECF No. 28 at 4 (citing DEP'T OF JUST., MANUAL COMMENT 8-2.400C, AMERICANS WITH DISABILITIES ACT TITLE III TECHNICAL ASSISTANCE MANUAL [WITH 1994 SUPPLEMENT] (1994); *Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006)).) And although Section 504 permits some forms of compensatory damages, *see Barnes v. Gorman*, 536 U.S. 181, 189 (2002), it does not allow recovery for emotional distress damages such as the "pain, suffering, and emotional distress" alleged by Plaintiffs, *see Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 221–22 (2022). Following *Cummings*, courts have generally concluded that mental health treatment costs stemming from a purely emotional injury, such as therapy costs, are not recoverable under Section 504. *See M.R. v. Burlington Area Sch. Dist.*, No. 21-cv-1284-jps, 2023 WL 4826471, at *4–5 (E.D. Wis. July 27, 2023) (collecting cases). Punitive (or exemplary) damages are also unavailable under Section 504. *Barnes*, 536 U.S. at 189. Thus, Plaintiffs lack standing to sue for these categories of damages because a favorable judicial decision could not redress their injuries. *See Lujan*, 504 U.S. at 560.

The only monetary recoveries that might be allowed under Section 504 are Plaintiffs' out-of-pocket costs for J.L.'s neuropsychological evaluation. But, as Milwaukee Montessori argues, these costs are not fairly traceable to Milwaukee Montessori. (*See* ECF No. 82 at 7.) Milwaukee Montessori's alleged violations of the Rehabilitation Act did not cause J.L. to suffer from ADHD or result in his parents having to expend funds to diagnose and treat him.

To convey standing, Plaintiffs' injury must be "fairly traceable to the defendant's allegedly *unlawful* conduct." *California v. Texas*, 593 U.S. 659, 674 (2021) (emphasis in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). And the line of causation between the illegal conduct and the injury "must not be too speculative or too attenuated." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013)). While J.L.'s initial referral to his physician concerning the potential that he had ADHD might have been precipitated by Van Aken's letter to Plaintiffs requesting (or demanding, according to Plaintiffs) that Perry L. and Emily M. take J.L. to his pediatrician, neither Van Aken nor Milwaukee Montessori caused J.L.'s ADHD. Nor are Van Aken's actions the reason J.L. needs treatment. It was J.L.'s pediatrician who recommended a full neuropsychological

assessment, (ECF No. 85-1 ¶10), and Plaintiffs chose to follow through with the evaluation *after* J.L. had already been dismissed from Milwaukee Montessori. As a result of the evaluation, J.L. was diagnosed with ADHD and subsequently prescribed medication to help manage his symptoms.

As Plaintiffs appear to concede by their failure to address this issue in their briefing, any amounts they have paid to address J.L.'s ADHD cannot be attributed to any alleged discrimination by Milwaukee Montessori. Those costs were incurred because J.L. was diagnosed with ADHD. Accordingly, these costs are not injuries that were caused by Milwaukee Montessori's allegedly unlawful conduct. Thus, Plaintiffs lack standing to sue for damages because they have not suffered any monetary injuries that are both fairly traceable to Milwaukee Montessori's unlawful conduct and redressable under Title III of the ADA or Section 504 of the Rehabilitation Act.

## CONCLUSION

As explained above, Plaintiffs lack standing to assert their claims for relief. Accordingly, Article III requires the Court to dismiss this lawsuit without prejudice for lack of subject-matter jurisdiction.

**IT IS HEREBY ORDERED** that Milwaukee Montessori's Motion for Summary Judgment, ECF No. 81, is **GRANTED** and all claims are **DISMISSED without prejudice** for lack of subject-matter jurisdiction. The Clerk is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on April 24, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge